## LAYTON v. ILLINOIS LIFE INS. CO.

## BACHMAN v. DAVIS.

### No. 5596.

Circuit Court of Appeals, Seventh Circuit.
Jan. 31, 1936.

Rehearing Denied March 12, 1936.

William S. Oppenheim, Earle E. Ewins, and Edward S. Price, all of Chicago, Ill., for appellant.

Roy O. West, Percy B. Eckhart, William M. Klein, and Lewis C. Jesseph, all of Chicago, Ill., for appellee.

Before EVANS and ALSCHULER, Circuit Judges, and BRIGGLE, District Judge.

BRIGGLE, District Judge.

The single, ultimate question to be determined upon this appeal is whether a life insurance agent under a contract for post-agency renewal commissions is entitled, upon receivership of the life insurance company, and its consequent inability to continue in business, to recover the "present value" of such commissions upon renewal premiums which it is alleged the company, had it continued in business, would have received in due course.

Appellant, Bachman, entered into an agency contract with the Illinois Life Insurance Company on September 1, 1919, and continued as an agent of the company until the appointment of a receiver for the company by the District Court on November 29, 1932. The contract and amendments thereto are long and involved, but the case turns upon the construction to be placed upon portions of sections 21 and 28 of the contract which are set forth in the margin.[1]

[1]"Sec. 21. It is agreed that said second party shall be allowed, under this agreement, the following compensation only, unless otherwise expressly stipulated in writing, namely: A commission on the original cash premiums for the first year of insurance, and (subject to conditions given in paragraph (b) of this section) upon the second and subsequent years' premiums, which shall, during his continuance as said agent of said first party, be obtained, collected, paid to and received by said first party, in cash, on policies of insurance effected with said first party by or through said second party, which commissions shall be at and after the following rates: (rates unimportant)."

"Sec. 28. It is agreed that if said second party dies, or this agency is otherwise duly terminated, without said second party having violated any of the terms of this contract, and said second party not having been declared a bankrupt or insolvent according to law, or having made an assignment of his property for the benefit of creditors, and no receiver of his property having been appointed, and all indebtedness of said second party to said first party having been paid in full within thirty days after such termination of this agency, said second party, or his legal representatives, shall continue to receive the renewal commissions as provided for Renewal Class B under paragraph (b), Section 21 hereof, at the rate to which he is then entitled, if any, that is either at the rate provided for Renewal Class B-1, B-2 or B-3, as the case may be, for as many full years as he may have already been paid renewal commissions hereunder. * * *"

The claim was referred to the master in chancery by the District Court with directions to report whether claimant was entitled to have his claim allowed in any sum and the master answered that he was not, which report was confirmed by the court and an order entered disallowing his claim. The appeal flows from this order.

It is averred and admitted that the agency contract was for no definite term and could be terminated at will by either party, and was, in fact, terminated by the receivership of the company. Appellant contends, however, that the provision of section 28 of the contract which provides for post-agency commissions was not terminable at the will of the principal and has been breached by the appointment of the receiver and the consequent inability of the company to perform. Appellee avers that such termination was by operation of law and was within the contemplation of the contracting parties and cannot in any event be made a basis of liability.

A similar question was before the Court of Appeals of the Eighth Circuit in the case of Moore v. Security Trust & Life Insurance Company, 168 F. 496, 499. The only important factual difference in that case was that the insurance company had voluntarily incapacitated itself from further continuance in the life insurance business by conveying all its assets to another company. The court there held that such conduct on the part of the company did not constitute an anticipatory breach of an agreement with its agent that would sustain an action by the agent for the present worth of future commissions. Judge Sanborn, speaking for the court in that case, said:

"The defendant was a corporation empowered by the state to conduct the business of life insurance. It was and is common knowledge, of which the parties to this contract could not have been ignorant, that more than 60 per cent. of the companies that embark in that business fail to find it profitable and in a few years either reinsure their risks and turn over their business to some other company, or become insolvent and abandon their attempt to insure the lives of their policy holders. The right to determine what risks it should accept and what it should reject, what rates it should charge, in what states it should conduct its business, and in what it should not, how long it should continue to insure lives, in view of its present and probable success or failure, and whether it should continue an unprofitable business to the ultimate loss of itself and its policy holders, or reinsure its risks in some other company and prevent greater loss, and generally to determine and carry into effect the business policy of the company, was vital to the due exercise of its corporate powers, to its continued existence, and to its success. Did the company, in view of this fact, intend by this agreement to deprive itself of this right, or to subject its exercise of it to an agreement to accept such applications for insurance as the plaintiffs directed, for the right to direct the acceptance of any is the right to direct the acceptance of all, to conduct such business in Kansas as the agents demanded, and to continue so to do, and to continue to carry on its general business of life insurance, whether profitable or unprofitable, during the entire term of the lives of the defendants, or during any other specific time? The true answer does not seem to be doubtful. It is obvious, from the nature of the company and the surrounding facts, that it intended to reserve to itself the right at its own free will to determine what applications for insurance it should accept and what it should reject, in what states and on what terms it should conduct its insurance business, what premiums it should charge, how long it should carry on its general business, whether or not, and when, if at all, it should turn over its business to another company, reinsure its risks, and cease to do an insurance business, free from all liability to its agents for damages for so doing. This right and its free exercise were as essential to the due exercise of the corporate powers of the defendant as the right of the plaintiffs to be free from lifelong service to it was to their comfort and prosperity, and nothing less than a clear and unequivocal agreement to surrender this right or limit its exercise could convince of such an intention. There was no such agreement. The implication invoked that the contract was not terminable at will, because it contained clauses, unnecessary if it was so terminable, specifying causes for its termination, is too feeble to withstand the compelling force of the presumption that the plaintiffs could not have intended to surrender control of their own business and services for life, and the defendant could not have intended to surrender its right or to limit the exercise of its right

to manage, control, continue, or terminate its business of insurance at will. The existence of this right in the defendant and its free and continuous exercise were implied in this contract of agency, and the plaintiffs took the chances of its exercise when they signed the agreement and entered upon their service under it. * * *

"The defendant, therefore, committed no breach of this agreement of agency by making a contract with the Pittsburg Company whereby it turned over its business and assets to that insurance company and incapacitated itself from continuing to carry on the business of life insurance."

The proposition that a discontinuance of business by an insurance company in no way breaches an agency contract also finds support in the previous decision of this court in 1900 in the case of Pellet v. Manufacturers' & Merchants' Insurance Company, 104 F. 502.

Section 28 of the contract must be read in connection with section 21 which obligates the company to pay a commission on renewal premiums "which shall * * * be obtained, collected, paid to and received by said first party, in cash. * * *" A proper construction of the contract requires that this condition be likewise read into section 28 which deals with appellant's rights upon termination of the agency; indeed, express reference is made in section 28 to the conditions of section 21. The contract having been terminated by operation of law, this condition was likewise incapable of fruition. The appellant's right to commissions on future premiums being at all times a prospective right and contingent upon payment being made by the holders of the contracts of insurance—contingent both before and after "due termination" of the contract—it must follow that this condition was within the contemplation of the contracting parties and the burden of failure of realization must fall alike upon them.

Appellant undertakes to distinguish the Moore Case, supra, from the instant one on the ground that the contract in the Moore Case was one to pay commissions on future premiums actually collected by the company, whereas in the instant case he avers that the engagement to pay was not conditional, but in all events for a fixed period of years. As already pointed out, we believe the conditions of section 21 of the contract are alike applicable to section 28, and are, therefore, unable to adopt appellant's construction of a fixed and definite engagement on the part of the company to pay in all events.

The very nature of the agency contract impels the conclusion that it must have been within the contemplation of the contracting parties that the company might some day become incapacitated from continuing in the insurance business. When the district court assumed jurisdiction over the affairs of the company and appointed a receiver, we think this amounted to a termination of the contract by operation of law reasonably within the contemplation of the parties and not an actionable breach on the part of the company.

The situation here is to be distinguished from that in the case of Central Trust Company of Illinois v. Chicago Auditorium Association, 240 U.S. 581, 36 S.Ct. 412, 416, 60 L.Ed. 811, L.R.A.1917B, 580, where the court, in holding that bankruptcy created a breach of the contract there under consideration, said that "the obligation of the bankrupt was clear and unconditional." The contract here abounds in contingencies. Appellant very earnestly contends that the company, having become incapacitated from further continuance of its contract with him, a right has accrued to him to claim damages on account of such disenablement. The fallacy of his position lies in his assumption that such right is absolute, whereas in fact it is prospective and contingent. The contingency has not happened and, by force of the receivership, cannot happen and his prospective right can never ripen into an absolute right.

We think it cannot be said that the company engaged itself unconditionally to remain in business for any given period and thus be in a position to receive the renewal premiums. The continued solvency of the company and its continued ability to collect and receive future premiums from those insured was one of the contingencies to be accepted alike by the agent and the company and, therefore, within the reasonable contemplation of the parties. The success or failure of the company was of like importance to the agent and the company.

If it, therefore, be assumed (which we do only for illustration) that the termination of the contract by the receivership proceeding is the "due termination" provided for in section 28, still appellant has the unsurmountable barrier of section 21—

the actual collection and receipt of the premiums.

We think a fair construction of the contract as a whole indicates clearly that the right to renewal commissions is conditioned on the continued existence of the company and the continued collection of premiums.

The order is affirmed.

