(No. 25695.—

THE PEOPLE *ex rel.* Ernest Palmer, Director of Insurance, *vs.* THE PEORIA LIFE INSURANCE COMPANY.—(MARGARET HARDWICK *et al.* Appellants, *vs.* CHARLES V. O'HERN, Receiver, *et al.* Appellees.)

*Opinion filed April 15, 1941—Rehearing denied June 12, 1941.*

518

Gunn, C.J., and Wilson, J., dissenting.

Harry E. Brown, Shurtleff & Niehaus, Miller Elliott & Westervelt, George Jochem, and Charles F. Welsh, (John Niehaus, Jr., and Donald G. Beste, of counsel,) for appellants.

Cassidy, Knoblock & Sloan, (John F. Sloan, Jr., of counsel,) for appellee Charles V. O'Hern, Receiver.

D. I. Jarrett, George Z. Barnes, and George W. Hunt, (David J. Kadyk and Edmund D. Adcock, of counsel,) for appellee The Alliance Life Insurance Company.

Mr. Justice Shaw delivered the opinion of the court:

This is an appeal, on leave granted, from the Appellate Court for the Second District, wherein an opinion was filed and a judgment entered affirming certain decrees and orders of the circuit court of Peoria county. The facts and general position of the parties with their contentions will be found fully reported in the opinion of the Appellate Court. (303 Ill. App. 430.) In our view of the case it will be unnecessary in this opinion to state them as fully as they are there stated.

The various appellants are either former agents or assignees of former agents of the defunct Peoria Life Insurance Company, a corporation under the laws of Illinois, which became insolvent in 1933, and for which a receiver was appointed on November 15 of that year pursuant to the Insurance Liquidation act. (Ill. Rev. Stat. 1933, chap. 73, secs. 105 *et seq.*) It is for us to decide whether these agents may recover commissions on renewal premiums paid to the receiver from his appointment to the date of the reinsurance agreement, and whether they can recover such commissions on renewals from the insuring company, after the execution of the reinsurance agreement. The circuit court and the Appellate Court have decided against the claims of the agents on both points.

After the Peoria Life Insurance Company (hereinafter referred to as the Peoria Company) had been found insolvent and the order entered that it should be liquidated, the receiver entered into a contract of reinsurance, pursuant to the provisions of the foregoing act, with the Life and Casualty Company of Chicago, which afterwards changed its name to the Alliance Life Insurance Company, (hereinafter referred to as The Alliance.) The court found that the plan of reinsurance was a proper step in the liquidation of the Peoria Company and that it would advance the best interests of the policyholders who assented thereto, and of all others who were entitled to share in the assets of that company. The last mentioned order was entered on August 22, 1934. About three years after the entry of this order, appellants filed their amended claims with the receiver, based upon contracts which they had held with the Peoria Company. These were agency contracts which had been executed between 1914 and 1929, and by which the agents were entitled to receive from the Peoria Company certain commissions or premiums and renewal premiums of policies issued by or under them. While the contracts are not identical, they are substantially the same and may

be regarded as identical for the purposes of this opinion. Under these agreements the agents were permitted and required to solicit life insurance business for the Peoria Company and the commissions they were to receive, so far as the matter is material to this suit, were to be paid on renewal premiums for various periods of years specified in each individual contract. Many of these agreements as to commissions on renewal premiums extended far beyond the date of dissolution of the Peoria Company.

All renewal commissions were paid to all of the claimants in accordance with the terms of their contracts up to the date of the appointment of the receiver. Shortly after this appoinment, the circuit court ordered the receiver to accept and hold, until the further order of the court, all premiums tendered by policyholders and to give proper receipts therefor. After the effective date of the reinsurance agreement, the premiums of all policyholders who elected to come in under that agreement were paid directly to The Alliance.

The details of the contract for reinsurance are long and complicated and require nothing more than a brief outline. By its terms, nearly all of the assets of the Peoria Company were transferred to The Alliance, as consideration for the reinsurance agreement and The Alliance reinsured and assumed the liability of the Peoria Company on outstanding life insurance policies of assenting policyholders, subject to a lien against each policy, which was tentatively fixed at fifty per cent of the net value of each policy, subject to certain adjustments to be thereafter made. The agreement provided for the eventual discharge of the lien on certain future contingencies, and, in the meantime, provided for segregation of all the assets of the former Peoria Company in a fund to be known as the "Peoria Life Fund." This agreement covers eleven double column pages in the abstract, printed in fine print, but we do not deem any other portion of it material to this opinion except

paragraph 37 thereof. In that paragraph of the agreement it was definitely provided that The Alliance did not assume any obligation under any contract theretofore made by the Peoria Company, with any agent (regardless of classification) manager or supervisor, or with any other person, persons or corporation for personal services. Under the plain and unambiguous provision of this paragraph, it is obvious that the appellants cannot prevail as against The Alliance unless they can point out some legal means whereby an obligation will be fixed on that company directly contrary to the only contract it has signed.

The affairs of the Peoria Company have been before this court on two previous occasions and in each of those cases we have recognized that the affairs of the Peoria Company have been liquidated. In *People* v. *Niehaus,* 356 Ill. 104, we recognized the validity of the Insurance Liquidation act and sustained the power of the Director of Insurance to appoint the receiver for the Peoria Company, as against an attempted order by the circuit judge in Peoria county. In the later case of *People* v. *Peoria Life Ins. Co.* 357 Ill. 486, we reaffirmed our holding in the case last cited, confirmed the power of the Director of Insurance to carry out the liquidation of the Peoria Company and held that pursuant to the statute, and by the decree of liquidation, the legal title to all of the property of the Peoria Company vested in the receiver.

In contracts which require the continued existence of the particular person or thing, the destruction or death of that person or thing will terminate the agreement. (*Martin Emerich Outfitting Co.* v. *Siegel, Cooper & Co.* 237 Ill. 610; 2 Restatement of Contracts, sec. 458.) The agency contracts here in question were necessarily, and as a matter of law dependent for their continued existence upon the lawfully continued existence of the Peoria Company and the parties are conclusively presumed to have entered into those contracts in contemplation of the possibility of the

insurance company's insolvency and its liquidation under the Insurance Liquidation act above cited.

A consideration of the question of liquidation brings us to the one narrow point which is decisive of the case. The appellants, from sheer necessity, rest their entire case upon a theory that the reinsurance contract between the receiver and The Alliance amounted only to a continuation of the business of the Peoria Company and, by implication, they admitted that if the Peoria Company was liquidated they would have no claim other than a demand against the fund in the hands of the receiver. They point to a clause in the preamble to the reinsurance agreement, which they say, sustains their position. This clause is as follows: "Whereas, a large part of the assets of the Peoria Life Insurance Company is invested in that class of securities which has depressed greatly with current depression markets and great loss would accrue to the policyholders of such company, their beneficiaries and their dependents, if forced liquidation of all assets were undertaken in present markets." This argument requires no further answer than to say that it fails to distinguish between a liquidation of assets, which is one thing, and the liquidation of a company, which is something entirely different. The appellants say in their brief that in deciding the case we must keep certain considerations in mind, thus: "The distinction must also be preserved between the case of an insurance company that is completely liquidated (in which case the agents' commissions would be reduced to a demand against the fund in the hands of the receiver) and a case like the present one, where, instead of completing the liquidation, all the policies are reinsured and all the insurance business is delivered over in bulk to the reinsuring company and the policies continued without interruption, except as to such policyholders who desired to cash in on their surrender value."

The arguments of the appellants in this behalf are not in any way concurred in by this court. When the receiver was appointed and the decree for liquidation was entered, the title to all of the property of the Peoria Company passed to the receiver by virtue of the Insurance Liquidation act, and we have so held in *People* v. *Peoria Life Ins. Co. supra.* From that moment, the Peoria Company had no further corporate power for any purpose for which it had been organized. It could not employ agents, issue policies of insurance, accept premiums or pay claims. Every contract which had been made with it was disaffirmed and every contracting party reduced to such claim as he might have against the receiver. Quite contrary to appellant's contention, the contract with The Alliance was not a continuation of the business of the Peoria Company, but an entirely new contract which was not even, in a strict sense, a reinsurance contract. The policyholder is not a party to a reinsurance contract, if it be strictly defined, and it has been held that he cannot bring a suit directly against the reinsuring company. (*Vial* v. *Norwich Union Fire Ins. Society,* 257 Ill. 355.) In this case The Alliance assumed the position of insurer only with those policyholders of the Peoria Company who expressly assented and agreed thereto. In this respect the contract is distinguishable from a reinsurance contract. No policyholder ever had any contract with any of the appellants, and neither did The Alliance. The appellants never had any interest in or lien upon any premium ever paid by any policyholder and the only relationship which those premiums bear to the compensation of the agents, is that they were used as a unit for measuring and determining those commissions. When the Peoria Company ceased to be an insurance company, it became and was the duty of the Director of Insurance to utilize its assets for the best interests of its creditors, and that is exactly what was done. In view of the difficulty of

realizing the utmost possible from those assets by a sale thereof, the difficulty or impossibility of policyholders, who had grown older, to secure other insurance, and for many other practical reasons, it was the judgment of the circuit court, that those assets could best be applied to a reinsurance contract. Those policyholders who wished to have their portion of the assets so applied concurred in the reinsurance agreement, and it was their assets and their future payments which were applied to that purpose. Policyholders not wishing to concur in the reinsurance plant were not required to do so, but were paid in cash their *pro rata* share of their respective equities in their respective policies. No agent contributed in any way to this reinsurance contract and there was no lien or claim of any agent which could impair the receiver's duty to purchase for the policyholders as much insurance as such policyholder's share of assets would buy for him.

There is no case cited to us which sustains the contention made by the appellants in its full length and breadth. They rely quite strongly on *General American Life Ins. Co.* v. *Roach,* 179 Okla. 301, 65 Pac. (2d) 458. There is much in the language of the court in that case to sustain appellants' position and although there are some distinguishing facts which might be pointed out, and which the Appellate Court did point out, it is sufficient for us to say that we do not agree with its reasoning or results. On the other hand, there are many cases from other jurisdictions which sustain the views we have expressed concerning this case. Several of those cases are reviewed in the opinion of the Appellate Court, but we consider the point so plain that extensive comment on other cases is not required. (*Layton* v. *Illinois Life Ins. Co.* 81 Fed. (2d) 600, *certiorari* denied, 298 U. S. 681; *North Carolina State Life Ins. Co.* v. *Williams,* 91 N. C. 69, 49 Am. Rep. 637; *Hepburn* v. *Montgomery,* 97 N. Y. 617; *Fass* v. *Atlantic Life Ins. Co.* 105 S. C. 107; *Kansas Union Life Ins. Co.*

v. *Bucman,* 141 Fed. 835.) In a note in 79 A. L. R. 478, the general rule is stated to be that after any rightful termination of an agency the agent is not entitled to commissions on renewal premiums, unless his contract of agency so provides. In support of this rule cases are cited from eighteen States and the Federal courts.

There is no contractual or other legal basis on which the appellants' claims can be sustained and the Appellate Court was right in affirming the orders and decrees of the circuit court.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WILSON, dissenting:

The majority opinion ignores the fact that, conformably to the decree of August 22, 1934, approving a reinsurance agreement proposal by the Alliance Life Insurance Company to the Peoria Life Insurance Company, it was adjudged that the former contracts of insurance with policyholders of Peoria "are hereby revived and renewed," and that policies of those former policyholders who assented to the reinsurance agreement were assumed and reinsured by Alliance. Appellants' claims for commissions on renewal premiums are only for commissions on contracts of policyholders who assented to the reinsurance agreement. It is true that the contracts of Peoria with its former policyholders were destroyed by the receivership, but it is equally true that the decree of August 22, 1934, and the reinsurance agreement of October 4, 1934, revived and renewed such contracts. The admitted fact that during the period from November 15, 1933, the day Peoria was placed in receivership, to October 4, 1934, these former policyholders had no insurance with Peoria or with its receiver, is, hence, not controlling. Contractual relations between Alliance and the assenting policyholders came into existence when they failed to file claims against the receiver for the amount

of their credit on the day of his appointment, thereby accepting the reinsurance agreement and, in addition, assigning unconditionally to Alliance their claims against Peoria and its assets for the benefit of the Peoria Life Fund. Both parties, namely, Alliance and the former policyholders, were then bound as of November 15, 1933.

Since the reinsurance agreement became effective, former policyholders have paid precisely the same premiums to Alliance as they previously paid to Peoria and, later, to its receiver. Included in these premium payments is an additional amount, technically called a "loading charge," covering the original and renewal commissions of the agents who procured the policies. In short, uninterrupted regular payments of premiums have been made by assenting policyholders, first, to Peoria, next to its receiver and, presently, to Alliance, and the premiums so paid have included the amounts allocable to agents as renewal commissions. New policies with Alliance, as insurer, have not been issued. Instead, Alliance's "Certificate of Assumption," issued to assenting policyholders, has been attached to the old Peoria policies. With complete knowledge of appellants' property rights, Alliance has thus collected premiums included in which were renewal commissions long since earned by appellants.

The appellants completely performed all obligations and duties devolving upon them under their contracts prior to the receivership. In the light of the circumstances present in this case, the decree appointing a receiver, the decree of August 22, 1934, approving the reinsurance agreement, and the agreement itself, do not constitute a bar to appellants' claim for renewal commissions earned by them as agents of Peoria prior to November 15, 1933. The right of an insurance agent to his renewal commissions has long been recognized as a substantial property right. (*General American Life Ins. Co.* v. *Roach*, 179 Okla. 301, 65 Pac. (2d) 458; *Hercules Mutual Life Assurance Society* v. *Brinker*,

77 N. Y. 435; *Schrimplin* v. *Farmers' Life Ass'n,* 123 Iowa, 102, 98 N. W. 613; *Michigan Mutual Life Ins. Co.* v. *Coleman,* 118 Tenn. 215, 100 S. W. 122.) An agent does not lose his right to renewal commissions, it has been held, by receivership of the issuing company or the transfer of its policies to a successor company. (*General American Life Ins. Co.* v. *Roach, supra; Schrimplin* v. *Farmers' Life Ass'n, supra.*) The mere fact that a reinsurance agreement or a judicial decree purports to deprive the agent of his property right in the renewal commissions is not decisive. (*General American Life Ins. Co.* v. *Roach, supra.*) Application of the foregoing principles leads to the conclusion that when the receiver of Peoria and, later, Alliance received renewal premiums on policies of insurance written by former agents of Peoria, a constructive trust was created, and, the receiver and Alliance, in succession, became trustees for the agents to the extent of their renewal commission interest in such premiums. (3 Bogert on Trusts and Trustees, sec. 471, 472; *General Life Ins. Co.* v. *Roach, supra.*) Indeed, if the renewal commissions are not paid to the agents it may well be that Alliance will receive a windfall contrary to the familiar principle that equity will not tolerate an unjust enrichment. *General American Life Ins. Co.* v. *Roach, supra; Schrimplin* v. *Farmers' Life Ass'n, supra.*

The review of the Peoria receivership proceedings discloses a virtual abandonment of the idea of liquidating Peoria in the accepted sense of the term "liquidation" and, instead, the reinsurance of its policies with Alliance pursuant to a decree approving an agreement between the receiver and Alliance. The reinsurance agreement discloses that there has been no sale of assets and distribution to creditors, that Alliance assumed and reinsured the policies of "assenting policyholders" and, for all practical purposes, is the successor of Peoria, so far as such policyholders are concerned. Admittedly, Alliance has actually received all

of the assets of Peoria except those necessary to pay receivership expenses and the claims of dissenting policyholders. So far as the record discloses, Alliance has received substantial sums of money and assets in kind but has not paid, and under the agreement is not compelled to pay, one cent for the property transferred to it. Alliance is not only a reinsurer but the reinsurance agreement plainly shows that it took over the bulk of business of Peoria, and assumed the latter's liability on all policies of insurance outstanding on November 15, 1933. Having accepted all the benefits attaching to the policies assumed and reinsured it cannot reject the burdens. *Pioneer Life Ins. Co. v. Alliance Life Ins. Co.* 374 Ill. 576.

*General American Life Ins. Co.* v. *Roach, supra,* closely parallels the present case. A comparison of the *Roach case* and the case at bar discloses neither contract of reinsurance recognized the right of agents to their previously stipulated renewal commissions and the court, in the *Oklahoma case,* required payment of the entire commissions owing because they were fixed liabilities, which could not be evaded. Here, the practical effect of the reinsurance agreement of October 4, 1934, is a transfer of the assets of Peoria to Alliance except sufficient cash to pay dissenting policyholders and general creditors. There is no substantial distinction between this situation and the complete acquisition by General American Life Insurance Company of all the assets of the Missouri State Life Insurance Company. The fact that the contract in the *Roach case* was made by the insolvent insurance company and not by its receiver, as here, is immaterial. The insurance commissioner of Missouri, under the law of the State, assumes complete charge of insolvent insurance companies and enjoys the authority and power of a receiver in this State.

*Layton* v. *Illinois Life Ins. Co.* 81 Fed. (2d) 600, cited in the majority opinion does not support the conclusion of

the court. In an action by a former agent against the receiver of the Illinois Life Insurance Company, the Circuit Court of Appeals for the Seventh Circuit stated that the one question presented for determination was whether a life insurance agent under contract for post-agency renewal commissions was entitled, upon receivership of the company, and its consequent inability to continue in business, to recover the "present value" of such commissions upon renewal premiums which the company, had it continued in business, would have eventually received. The only relief sought in the *Layton case* was the present value of commissions. So far as the opinion discloses, the business was not reinsured and the successor company was not receiving renewal premiums with the ability to pay renewal commissions. The court's observation: "The very nature of the agency contract impels the conclusion that it must have been within the contemplation of the contracting parties that the company might some day become incapacitated from continuing in the insurance business," might, perhaps, be pertinent to the present inquiry if the relief sought was the present value of unpaid renewal commissions. Such is not, however, the case. Appellants' claims are not for damages resulting from the loss of the privilege of soliciting insurance after November 15, 1933, but are, instead, for compensation for services wholly performed prior to the day named.

By the decree of August 22, 1934, the agency contracts of appellants were disaffirmed as of November 15, 1933, and, accordingly, they were no longer authorized to act as agents, managers, or supervisors, or to sell contracts of insurance or collect premiums thereon due to Peoria. The agents were not before the court when this decree was entered and they were not parties to the reinsurance agreement. Manifestly, their claims to payment for services previously rendered in selling the original policies and com-

pensation already earned cannot be destroyed by either the decree or the agreement executed pursuant thereto.

For the foregoing reasons, among others, I am constrained to dissent from the conclusion reached by, and the views expressed in, the majority opinion.

Mr. CHIEF JUSTICE GUNN, also dissenting:

I concur in the dissenting opinion of Mr. Justice Wilson, but, in addition, desire to point out that the majority opinion fails to dispose of the constitutional question raised in the briefs. The proceeding involved is dual in its nature. In the first instance it was for the appointment of a receiver under applicable statutory provisions of the State of Illinois. That matter was litigated and the appointment of a receiver confirmed. It then became the duty of the receiver to administer the property of the Peoria Life Insurance Company. This involved, among other things, the power to continue the insurance wholly or partially in force by reorganization or sale to another company, or a distribution of its assets among its creditors, or a combination of both. The plan finally evolved provided that the policyholders could elect to continue their policies in the Alliance Life Insurance Company on a basis proposed by the latter, or they could elect not to receive reduced insurance, but have a claim for paid-up value. And the plan also required creditors to file their claims by a given time with the receiver.

Appellants being agents, who, in addition to a part of the initial premium, were under a contract to receive commissions on premiums paid in future years, did file their claims with the receiver in proper time. The contracts of appellants, or at least some of them, contained provisions where, under certain contingencies, the receipt of future commissions became vested without further work or services upon the part of the agent, some of which, the record shows, were in that condition at the time the receiver was

appointed. If there had been a sale of all of the assets of the Peoria Life Insurance Company the distribution thereof among the creditors would have presented slight difficulties. Here, however, a large majority of the policyholders elected to continue their insurance with the Alliance Life Insurance Company, and substantially all of the assets of the Peoria Life Insurance Company were made available under certain contract provisions for such purpose, and what was deemed sufficient to discharge other liabilities of the Peoria Life Insurance Company was retained by the receiver. The purchasing company and the receiver attempted to anticipate all possible claims, but provided that if the receiver should become liable for claims not anticipated, the Alliance Life Insurance Company would pay the receiver from a trust fund, which was to be kept intact until 1949.

Appellants claimed the Peoria Life Insurance Company owed them money for services rendered, and that, under several of the contracts, only the time of payment was deferred—not the right to payment. Appellees, on the other hand, contend that the termination of the agency contracts of the several appellants terminated all of their rights under such contracts. The claims of appellants, as amended, presented a suit for an accounting.

If any of appellants had performed under their agency contract all that they were required to perform to be entitled to the benefit of their payments, and such contingency had occurred before the appointment of a receiver, they would have a vested right to the amount agreed to be paid for the term specified, or its present value. (*Lowell v. St. Louis Mutual Life Ins. Co.* 111 U. S. 264; *Central Trust Co. v. Chicago Auditorium Assn.* 240 U. S. 581.) The insolvency of the insurance company would create an anticipatory breach of the agent's contract. (*Kinnan v. Hurst Co.* 317 Ill. 251.) In *Roehn v. Hurst,* 178 U. S. 1, it was held that the anticipatory breach of an executory

contract might properly be the subject matter for damages; and in *People* v. *West Town State Bank,* 373 Ill. 106, this court held that while future rent could not be collected from a property in the hands of a receiver, on the other hand, if the contract fixed a measure of damages for the breach of such lease the latter was recoverable from the receivership. In this case it appears that, at least as to some of appellants, contingencies had arisen which entitled them to payments from succeeding years' premiums without rendering any further services, which would make their claim one accrued at the date of the receivership, and subject to having its present value fixed in such proceeding. That is one of the objects sought in this proceeding, to ascertain whether these several appellants have claims which accrued prior to the appointment of a receiver, and which require an accounting to determine their relative priority and value compared with the distribution awarded other creditors.

The view of the majority seems to support the proposition that the termination of the appellants' rights to act as agents has terminated all of the rights they have accrued under such contracts. To this I cannot accede, as I believe to so hold would authorize the taking of property without due process of law in the class of cases above specified. I see no difficulty in retaining the Alliance Life Insurance Company in the case. They have agreed with the receiver that in case liabilities not anticipated accrue to the receiver that the latter will be reimbursed out of a fund which will ultimately go to the Alliance Life Insurance Company. To settle the controversy without a multiplicity of suits is one of the provinces of a court of equity.

I believe the cause should be reversed for the purpose of taking an accounting.