LIBERTY NATIONAL INSURANCE COMPANY, Appellant-Cross-Appellee,

v.

REINSURANCE AGENCY, INC., Appellee-Cross-Appellant.

No. 16829.

United States Court of Appeals Ninth Circuit.

June 28, 1962.

Rehearing Denied Aug. 1, 1962.

Merrill, Circuit Judge, dissented.

Hawkins & Miller, Eugene L. Miller, Coeur d'Alene, Idaho, Paine, Lowe, Coffin, Herman, O'Kelly, and Alan P. O'Kelly, Spokane, Wash., for appellant.

Elder, Elder & Mitchell, R. N. Elder, and Thomas A. Mitchell, Coeur d'Alene, Idaho, for appellee.

Before CHAMBERS and MERRILL, Circuit Judges, and BOWEN, District Judge.

BOWEN, District Judge.

This is a diversity of citizenship case. Appellant Liberty National Insurance Company, the defendant in the Trial Court, is a citizen of Idaho, and appellee Reinsurance Agency, Inc., the plaintiff in the Trial Court, is a citizen of Illinois. A sum in excess of $10,000 exclusive of interest and costs is involved. The Trial Court under § 1332, Title 28 U.S.C., had, and this Court under § 1291, id., has jurisdiction.

This appeal involves incidents of the rehabilitation of appellant insurance company. The main issue here is whether the appellant's rehabilitator, who on September 24, 1956 was appointed and ordered by the Idaho State Court to take control of appellant's insurance business and remove the causes which made rehabilitation necessary, effectively cancelled the September 1, 1955 contract of appellant to pay appellee insurance brokerage commissions.

Appellant entered into by that contract a written agreement dated September 1, 1955, in return for appellee's assistance in obtaining for appellant the insurance business involved, to pay monthly to appellee a 5% commission on all money remitted to appellant by appellant's agent respecting the agent's automobile insurance business in Germany of which appellant desired to become the insurer. There were paid for the period before September 1956 all such contracted commissions including the October 19, 1956 payment of $1,780.19 on the August 1956 commission account, which payment, however, the Trial Court held was unauthorized, as more fully appears below. No other such payments were made under the commissions contract to appellee from September 1, 1956 up to the time of trial.

Pursuant to an official examination of the business affairs of appellant, the Idaho State Department of Insurance found and reported to a proper Idaho State Court in effect that appellant was in serious financial difficulty and had understated its claims liability several hundred thousand dollars, that its surplus was completely wiped out, and that its capital was seriously impaired. Thereupon the State Court of Idaho, upon application of that State's Insurance Commissioner, entered that Court's order of September 24, 1956 under the provisions of Idaho Code, Sections 41–101, 41–3504 and 41–3505,[1] directing the Commissioner to take control of the appellant company, its business and all its assets and to conduct all business of appellant and to take action, subject to court direction, for removal of the causes and conditions which made rehabilitation of the company necessary. The order further appointed the Commissioner as rehabilitator who, through his deputy as acting rehabilitator, proceeded with the required rehabilitation.

Thereafter the rehabilitator cancelled, reduced or adjusted the commission payments of about 75% to 80% of all the commission contracts in force when the rehabilitator took control including the above mentioned September 1, 1955 agreement of appellant to pay appellee the 5% commission, which was cancelled by the rehabilitator, but which cancellation was found ineffective by the Trial Court because the rehabilitator continued to receive remittances from appellant's agent respecting the German business. Also, the rehabilitator took control of all the capital stock of appellant, sold some of it to new stockholders and supervised the replacement of the old with new corporate officials. The rehabilitator also reduced and adjusted appellant's payments and allowances to its agent for the German business. All of these acts of the rehabilitator were approved upon review by the State Court, and rehabilitation was terminated and the rehabilitated business and assets were returned to appellant on May 28, 1957. Neither the appellant itself nor its business or assets had been liquidated during rehabilitation.

1. Now I.C. §§ 41–201, 41–3306, 41–3307.

Appellee was during rehabilitation given notice of the cancellation of the 5% commission contract and was reminded by the rehabilitator of appellee's right to file claim or make objection in State Court on account of such cancellation, but appellee failed to do that. Instead, after termination of the rehabilitation and the return to appellant of its rehabilitated business and assets, appellee refused to recognize cancellation and brought this action in the United States District Court of Idaho seeking, under the rehabilitator-cancelled contract, recovery of $38,568.00 for the unpaid 5% commissions on all premiums received by appellant from appellant's agent for German business from September 1, 1956 and during all the rehabilitation period and for the entire subsequent period up to the time of trial.

Appellant in its answer in the Trial Court denied liability, and, among other things, pleaded nullification of the September 1, 1955 commissions contract by the rehabilitation proceedings and by the rehabilitator's cancellation of the contract, pleaded further that appellee was estopped in this action to repudiate the rehabilitator's cancellation of the contract and the State Court's approval of such cancellation, and sought recovery of the $1,780.19 commissions paid without authorization to appellee during rehabilitation.

The Trial Court entered judgment upholding validity of the commissions contract and awarded judgment to appellee against appellant for the 5% commissions on all premiums paid during the months following termination of rehabilitation beginning with June 1957 and continuing through May 1959, the last full month up to the time of trial, less the $1,780.19 unauthorized payment of October 19, 1956, in the remaining sum of $22,335.91, plus Trial Court costs of $1,032.50, but denied appellee any recovery of such commissions on any premiums paid by appellant's agent during the period of rehabilitation because the State Court's injunction had forbidden the payment of the commissions during rehabilitation.

Except as to that credit of the $1,780.-19 unauthorized payment on the total amount found due appellee from appellant, the Trial Court refused to grant any and all other relief requested by appellant.

Each party, as to the part of the Trial Court's judgment adverse to it, appeals to this Court.

Appellant's principal contention is in effect that, under the applicable Idaho law, like similar laws in other states, rehabilitation proceedings are not debtor-creditor proceedings involving primarily the rights and duties of creditors and debtors, but that rehabilitation proceedings are intended to uphold and enforce the public interest, welfare and policy which require that insurance companies not engage in unbusinesslike, extravagant and wasteful practices impairing or likely to impair the solvency, integrity and business reputation of those like appellant who for business purposes contract to insure policyholders against loss from insurable risks, that appellee is not entitled to recover anything in this case, and that appellant should be allowed recovery of the $1,780.19 paid improperly during rehabilitation to appellee.

Appellee's contentions center upon its insistence that, in effect, so far as concerns the commissions contract of September 1, 1955, the rehabilitator, like a general receiver, took the appellant's contracts subject to their encumbrances, and that while rehabilitating the appellant's business, the rehabilitator could not, as part of the rehabilitation process, cancel the commissions paying contract of September 1, 1955 while continuing to receive and use for rehabilitation the profits from appellant's German business agency, as was done in this case, and that appellee should have been by the Trial Court and should be here allowed recovery against appellant for all commissions accruing under the contract for September 1956 and all months during rehabilitation and for all subsequent

months until the time of trial, without deduction of the $1,780.19 payment of October 19, 1956 because, appellee contends, that was correctly credited to the August 1956 commissions account as it should have been. We note that the commissions contract called for payment of the commissions during the month next after the month of their accrual, so that as to the September 1956 commissions accruing before the rehabilitation order of September 24, 1956, payment did not become due until the following October which was subsequent to the September 24, 1956 rehabilitation order under which all commissions payment was stopped.

As to the Idaho statutory provisions relating to the grounds for rehabilitation, the State Court's authority to order rehabilitation, appoint rehabilitators and issue injunctions in aid of rehabilitation, and the authority of rehabilitators, of insurance companies, see Idaho Code, Title 41, Sections 101, 3504, 3505, 3510 and 3512 (I.C.A. Sections 41–101, 41–3504, 41–3505, 41–3510 and 41–3512 [2]).

Consideration of the provisions of those Idaho related statutes above mentioned convinces us that Idaho law on the subject of rehabilitation of irresponsible insurance businesses provides for the application of comprehensive remedies, judicial and administrative, with sweeping powers granted to a proper State Court and its rehabilitator to take possession of and to manage all business, property and assets of such businesses, and to prevent interference by any and all other persons with such possession and management, and to remove the causes making rehabilitation necessary.

In the case of Caminetti v. Guaranty Life Ins. Co., 52 Cal.App.2d 330, 126 P.2d 159, 164 (1942), referring to similar California laws the court in part said:

"[15–17] The insurance commissioner of the State of California is a public officer, clothed with the power of the State. The business

of insurance is one charged with a public interest."

And in Caminetti v. Pacific Mut. Life Ins. Co. of California, 22 Cal.2d 344, 139 P.2d 908, 913, 917 (1943) it was at page 913 held:

" * * * It has been held that the commissioner acts 'as an officer of the state * * * in the public interest' regardless of the fact that his 'duties * * * as conservator are in the nature of those of a receiver or trustee.'" (Citing).

And further at page 917, the same Court stated:

"[15–18] * * * It is settled that contract and property rights must yield to legislation in the interest of the general welfare. (citing cases) That the power of the commissioner with respect to statutory proceedings against insolvent or delinquent insurers is of general public concern is not open to question. (citing cases) It is for the Legislature to determine what the interests of the public require and what measures are necessary for their protection. (citing cases)".

■ Agents do not have a vested interest in future insurance premiums against insolvency receivers or against rehabilitators. Layton v. Ill. Life Ins. Co., 7 Cir., 81 F.2d 600, 602; People ex rel. Palmer v. Peoria Life Ins. Co., 376 Ill. 517, 34 N.E.2d 829, 136 A.L.R. 151. The same is true of policy holders as to whom, in Carpenter v. Pac. Mut. Life Ins. Co., 10 Cal.2d 307, 74 P.2d 761, 774–775, the California Supreme Court said:

"Neither the company nor a policyholder has the inviolate rights that characterize private contracts. The contract of the policyholder is subject to the reasonable exercise of the state's police power. The only restriction on the exercise of this power is that the state's action shall be reasonably related to the public interest and shall not be arbitrary

2. Now I.C. §§ 41–210, 41–3306, 41–3307, 41–3312, 41–3505.

or improperly discriminatory. * * * This phase of state control is extremely important. Insurance is a public asset, a basis of credit, and a vital factor in business activity. Obviously, if an insurance company gets into financial difficulties, something must be done to remedy the situation. Either the company must be liquidated, and its assets distributed to its creditors, thus immeasurably injuring many of its policyholders who are thus deprived of insurance protection, or the business must, if possible, be rehabilitated. The public has a grave and important interest in preserving the business if that is possible." (citing).

It has been held that under some state statutes the rehabilitator, by the order, and as of its date, directing him to take possession of the assets, acquires title to the assets of the insurance company to be rehabilitated. Ace Grain Co. v. Rhode Island Ins. Co., D.C., 107 F.Supp. 80.

The Idaho State Court's authority respecting the subject of this litigation including the question whether or not the commission contract of September 1, 1955 should be cancelled is prior and paramount to this Court's authority touching the same subject. Hutchins v. Pac. Mut. Life Ins. Co., 9 Cir., 97 F.2d 58, 60 and cases there cited.

■ To determine in the present action appellee's requested relief based on its repudiation of the State Court's approval of cancellation of the September 1, 1955 contract is to re-decide in a federal court not appellate to the State Court what was previously decided by the Idaho State Court when it had unquestioned jurisdiction in the rehabilitation proceeding. In that proceeding on that question of cancellation, appellee was if it wished privileged to have a hearing, as expressly provided in the Idaho State Insurance Code. Idaho Code, Vol. 7, 1959 Cum. Pocket Part p. 334–5, 41–118, 41–122.[3] Under a well-known

legal principle appellee is supposed to have known that law and to have contracted with it in mind. Layton v. Ill. Life Ins. Co., supra; People v. Peoria Life Ins. Co., supra, cert. den. Harwick v. O'Hern, 314 U.S. 688, 62 S.Ct. 300, 86 L.Ed. 551. Appellee also had advance written notice of the rehabilitator's intention to cancel, and appellee further had notice from the rehabilitator's later reminder of appellee's right to such hearing.

Confirming a previous telephone conversation with appellee, the rehabilitator by his office assistant's letter of December 20, 1956 gave appellee notice that the September 1, 1955 contract would be cancelled as of December 31, 1956, thereby with the telephoned notice giving appellee at least 10 days advance notice of such intended cancellation. Subsequently during rehabilitation, in his letter of May 3, 1957 about 25 days before entry of the State Court's final judgment approving such cancellation, the rehabilitator reminded appellee that

"* * * With the company under rehabilitation proceedings and under the jurisdiction of the Court, *and with this matter known to you, it would be assumed that you would take prompt action after receipt of our letter of December 20, 1956.* * * *" (emphasis added)

and also indicated that he might have to object to appellee's objections in court as knowingly not timely made if appellee should so make any. By the word "action" in the above quoted excerpt from the rehabilitator's 25-day-before-judgment reminder, he must have meant "court action", because the other kinds of action normally taken before commencing court action had already been taken by the appellee and the rehabilitator.

From the foregoing and reasonable inferences therefrom, it seems obvious that appellee had both in law and in fact notice of his right to a hearing in the State (rehabilitation) Court upon his

3. Now I.C. § 41–232.

present objections to such cancellation, and that he also had such notice from the rehabilitator's reminder, and that the State Court thought so when it approved the cancellation. Appellee, however, did not seek a hearing in that State Court proceeding, took no court action therein, and the cancellation of the contract became final as to appellant and appellee with the approval of such cancellation by the State Court's judgment and order. Appellee, as well as appellant, if aggrieved, could and should have in that proceeding laid the foundation for proper appellate review.

In Hutchins v. Pac. Mut. Life Ins. Co., supra, at page 60 (of 97 F.2d) it was by this Court held:

"[4] Having acquired possession of the res by appropriate action, the state court drew to itself the power to determine, subject to review on appeal or certiorari, all questions germane to the proceeding. As said in Lion Bonding & Surety Co. v. Karatz, supra (page 485), [262 U.S. 77, 43 S.Ct. 480, 67 L.Ed. 871], * * * 'If the legality of the state court's action was to be questioned, it could be done only by laying the proper foundation through appropriate proceedings in that court.' The way was open to appellant, by intervention in the state court, to be heard on all matters sought to be litigated here. These questions have been as effectually withdrawn from the jurisdiction of the lower Federal courts as has the property of the insurance company itself." (citation added). See, generally, Neblett v. Carpenter, 305 U.S. 297, 59 S.Ct. 170, 83 L.Ed. 182, 187–188 (Headnotes 1–4).

The September 1, 1955 contract was one of the assets of appellant taken over by the rehabilitator pursuant to the State Court's order in the rehabilitation proceedings, and the contract as such asset was within the State Court's jurisdiction. The rehabilitator with the State Court's approval cancelled the contract

in the rehabilitation process because the insurance claims losses and costs attributed to the related German business had been grossly disproportionate to the premiums received on that business thereby contributing in large part to the depletion of appellant's reserves which was one of the important causes making rehabilitation necessary. Ridding the appellants' business from the excessive burdens of its reserves depleting contracts, like the September 1, 1955 contract, was one of the most urgent reasons for the rehabilitation of appellant.

■ The above quoted statement of this Court in Hutchins was made before the termination of the litigation in the state court concerned in that case, but the principle announced in Hutchins by this Court is just as applicable here. The jurisdiction of the State Court over the September 1, 1955 contract in this insurance company rehabilitation proceeding was valid and has never been questioned. Since appellee had the express statutory right to a hearing, and had actual notice of such right, the requirement of procedural due process is satisfied. Appellee here questions not such jurisdiction but only what the State Court accomplished by the exercise of it. As basis for recovery in this case, appellee, respecting jurisdiction, asserts only error of the State Court judgment which if proper foundation had been laid would have been subject to review by proper appellate courts, not including the Trial Court or this Court. Neither appellee nor appellant sought such review. As to both of them that judgment is still binding, and the appellee has no right to raise any such questions here. For similar reasons the appellant is in a like position. Hutchins v. Pac. Mut. Life Ins. Co., supra; Neblett v. Carpenter, supra.

Subsequent to the Idaho State Court's judgment of approval of cancellation, not only was no appellate review had or sought, but that Court has not, nor have the parties, rescinded or amended such cancellation, and the cancelled contract of September 1, 1955 has not been reinstat-

ed. So far as concerns the record in this case, that contract to this day, rightly or wrongly, remains cancelled by the final judgment of the State Court with unquestioned jurisdiction, and neither appellant nor appellee as to any matter or thing disclosed by this record has in law any right or duty except as already ordered by the State Court.

Because of the foregoing among other reasons, it follows that the awards by the Trial Court of money to the appellee and of credit to appellant on sums found due from appellant to appellee were incorrect and should be set aside and reversed, and this case should be dismissed without relief to either party in the Trial Court or this Court. So ordered.

MERRILL, Circuit Judge (dissenting).

I dissent.

I agree that under Idaho law rehabilitation of an insurance company permits its escape from burdensome contracts, but I do not apprehend that it permits the rehabilitated company to continue to receive the benefits of a contract and escape only from its detriments. Yet it seems to be that this is precisely what occurs here.

Here the services for which appellee by its agreement was entitled to a commission had been fully performed. The benefits, subject to the agreed commission, were flowing to the company. The district court ruled that if the rehabilitator had felt that the price being paid (commission) for these benefits was too high, he could have terminated the whole arrangement, but that the company could not continue to enjoy the benefits and unilaterally relieve itself from the necessity for paying the stipulated compensation. I agree.

Nor do I feel that this claim has been barred by res judicata. It does not appear that the issues presented by this case were ever considered in the state court or resolved by that court. Appellant apparently relies upon the following paragraph in the order of the state court terminating rehabilitation:

"That those acts and actions taken by the Commissioner of Insurance of the State of Idaho, and his Deputy, as the acting Rehabilitator, toward removal of the causes and conditions which made the rehabilitation of said insurance company necessary are hereby approved."

This order was made in response to a report on the rehabilitation proceedings made by the rehabilitator. This report deals at length with the problems encountered in securing refinancing of the company. The cancelling of unprofitable lines of insurance and the discontinuation of writing insurance in certain localities are dealt with in brief and general terms in one paragraph. One sentence of this paragraph reads:

"The company has continued writing insurance both in Alaska and in Germany and the underwriting experience in these two places has been made known to [the new shareholders]."

Other than this I find nothing in the report which could possibly be said to bear on appellee's contract.

Nor do I find here a bar by nonclaim. The Idaho statutes do not require the filing of any creditor's claim during rehabilitation. The only requirement concerning a creditor's submission of a claim is when the company is being liquidated. I.C. § 41–3507.[1]

I conclude that appellee is entitled in full to the commissions earned pursuant to its contract and accordingly would affirm the district court upon the appellant's appeal and reverse upon the appellee's cross-appeal.

1. Now I.C. § 41–3309.