ERVIN, Judge.
Appellant, the agency representative of an insolvent insurance company, appeals a final order approving the receiver’s recommendation on the claims of the representative, recommending payment to appellant for earned but unpaid commissions during the calendar years 1977 and 1978, but denying all claims for commissions allegedly due to the representative pursuant to the representative’s contract for commissions with the insolvent insurer after the date of receivership. We affirm.
On December 23, 1975, appellant and the subsequent insolvent insurer, Florida Home Insurance Company (Florida Home), entered into a representative agreement granting appellant Mertens the authority “to solicit and appoint insurance agents for such contracts of insurance covering risks on mobile home insurance coverages and related lines” as Florida Home “has authority lawfully to make”. The contract provisions relevant to this appeal state:
5. CONTINGENT COMMISSIONS:
In addition to advance commissions otherwise payable, the COMPANY hereby agrees to pay the REPRESENTATIVE a contingent commission as respects all policies or premium installments on all classes of mobile home business that the COMPANY has lawful authority to write that are produced by any agents or their successors or assigns originally appointed by REPRESENTATIVE and which shall be computed as follows:
a. If, in any accounting period, the ratio of losses incurred to premium earned on all policies issued by any agents or their successors or assigns originally appointed by REPRESENTATIVE is
1.less than twenty-five percent (25%), the contingent commission due and payable shall be five percent (5%) of the earned premium for the accounting period;
2. greater than twenty-five percent (25%), then the contingent commission due and payable shall be determined by adding one-fourth (¼) of one percent (1%) for each point the loss ratio is below forty-five percent (45%). This resulting percentage will be paid on the earned premium for the accounting period;
3. greater than forty-five percent (45%), then there is no contingent commission due for the accounting period.
⅜ * ⅝ * *
12. The provisions of this contingent agreement pertain to all policies issued by any agent or his successors or assigns originally appointed by REPRESENTATIVE whether written under the original agency agreement or a replacement or succeeding agreement or by a subsidiary of the COMPANY or through a “fronting” or reinsurance arrangement with the COMPANY or through a bordereau arrangement or contract with another company.
[[Image here]]
18. If this representative agreement between the COMPANY and the REPRESENTATIVE IS cancelled by either party for any reason whatsoever with or without cause, the Contingent Commission portion of this Agreement shall be in full force and effect for five (5) full accounting periods after such cancellation of the contract. The COMPANY shall pay all contingent commissions for a period of five (5) calendar years. At the end of five (5) accounting periods or five (5) calendar years if all monies due the REPRESENTATIVE have been paid, this Agreement shall automatically expire and no further payment by the COMPANY is due or payable to the REPRESENTATIVE.
(emphasis supplied)
On October 12, 1978, an order of seizure was entered pursuant to Section 631.361, Florida Statutes, directing the Department of Insurance (Department) to take possession and control of the financially troubled insurer’s property, books, accounts, bank *1134 accounts and premises. Subsequently, on December 11, 1978, the lower court found Florida Home impaired within the meaning of Section 631.011(3) and (4), Florida Statutes, and appointed the Department as receiver of Florida Home for purposes of rehabilitation. Among other things, the receiver was directed to conduct the business of the insurer and to negotiate with insurance companies for the purpose of attempting to have policies of insurance presently in force, assumed or reinsured into an acceptable insurance carrier. The court further provided that all policies of insurance issued by Florida Home would remain in full force and effect until further order of the court. After attempts were unsuccessfully made to restore Florida Home to a financially solvent condition, the receiver petitioned the court for an order authorizing the receiver to enter into a reinsurance treaty and supplemental agreement with Protective Indemnity Insurance Company of Florida (Protective), which, among other things, assigned all outstanding mobile home insurance policies of Florida Home, including all policies written by agents of appellant, to Protective for the purpose of processing and paying claims, and authorized Protective to service all policies rein-sured by it. Protective is not a carrier which insures mobile homes, and the policies in effect as of the date of the order appointing the receiver (December 11, 1978), including those written by appellant’s agents, were allowed to lapse, run out and Protective neither rewrote nor renewed them.
Following a subsequent order of liquidation, notifying all persons having claims against Florida Home to timely file such claims with the receiver, appellant filed a claim for all earned but unpaid commissions for the years 1977 and 1978, and, pursuant to paragraph 18 of its contract with Florida Home, sought additional compensation for renewal commissions over a period of five calendar years thereafter, which, when reduced to present value at six percent as of December 31,1979, resulted in a total claim of $358,825.18.[1]
Both the receiver and the lower court found that appellant was entitled to his claim for earned but unpaid commissions for the years 1977 and 1978 in the amount of $64,236.63, but, because the evidence showed that Mertens’ agents produced no new business for Florida Home after December 1978, and because Protective did not renew any policies written by Mertens’ agents after that date, denied the claim for contingent commissions for the five years following the date of liquidation.
The first two issues raised by Mertens are (1) whether the receiver was burdened with all the obligations associated with the policies, including appellant’s agency contract with the insolvent insurer, and (2) whether the receiver anticipatorily breached the contract between appellant and Florida Home Insurance Company by assigning all mobile home insurance policies to an insurer which failed to renew them or otherwise protect appellant’s interest in future renewal commissions, as provided for in its contract with Florida Home. Essentially, Mertens argues that when the Department was appointed as receiver of the assets of Florida Home, it thereby stood in the shoes of Florida Home and necessarily assumed all rights and obligations of the business, including the obligation to pay to the representative contingent commissions for five full accounting periods after the cancellation of the contract.
In answer to appellant’s arguments asserted under points I and II, we respond that the law is clear that there can be no breach, anticipatory or otherwise, of an executory contract by a receiver unless the receiver specifically elected to be bound thereby. See Real Estate Marketers, Inc. v. Wheeler, 298 So.2d 481, 483 (Fla. 1st DCA 1974). Moreover, since the receiver was court-appointed, it needed approval by the court to maintain the contract with *1135 appellant. American Automatic Co. v. Harbour Towers Development Corp., 227 So.2d 94, 95 (Fla. 3d DCA 1969). Although the order appointing the Department as receiver for purposes of rehabilitation directs the receiver to maintain in full force all policies of insurance or similar contracts of coverage issued by Florida Home until further order, the order did not grant approval to the receiver to maintain the representative agreement between appellant and Florida Home. Moreover nothing in the record reflects that the receiver elected to be bound by the terms of appellant’s contract with Florida Home, even though the receiver had notice of that contract as early as October 31, 1978. Finally, Section 631.-291(4)(b), Florida Statutes (1975),[2] grants the receiver the right “to cancel any contract or part thereof by virtue of any contractual provision or law of this state.”
The general rule is that insurance agency contracts ordinarily imply that the agent’s right to commissions on renewal premiums is conditioned upon the insurance company’s continued operation in business. Thus, it is generally recognized that an agent’s right to commissions on renewal premiums is lost when the insurance company ceases to do business. See Annot. 36 A.L.R.3d 958, 965-966 (1971). For example, in Layton v. Illinois Life Insurance Co., 81 F.2d 600 (7th Cir.1936), cert. denied, 298 U.S. 681, 56 S.Ct. 949, 80 L.Ed. 1401 (1936), the court was confronted with the question of whether a life insurance agent under a contract for post-agency renewal commissions was entitled, upon receivership of the insurance company, to recover the present value of such commissions on renewal premiums which, it was alleged, the company, had it continued in business, would have received in due course. The Seventh Circuit Court of Appeals concluded that the appellant’s right to commissions on future premiums was at all times a prospective right that was contingent upon payment being made by the holders of the contracts of insurance, and therefore it was within the reasonable contemplation of the parties that the agent’s right to renewal commissions was subject to the continued existence of the company and the continued collection of the premiums:
The very nature of the agency contract impels the conclusion that it must have been within the contemplation of the contracting parties that the company might some day become incapacitated from continuing in the insurance business. When the district court assumed jurisdiction over the affairs of the company and appointed a receiver, we think this amounted to a termination of the contract by operation of law reasonably within the contemplation of the parties and not an actionable breach on the part of the company.
81 F.2d at 602.
We similarly regard the agency contract before us as reasonably implying the continued existence of the insurance company, because the parties must have reasonably contemplated that the continued payment of any such commissions depended upon the actual collection or receipt of the premiums by the company. Paragraph 5 of the contract, pertaining to the agent’s right to contingent commissions, bound the company to pay to the representative contingent commissions on all classes of mobile home business that the company has “lawful authority to write.” (Emphasis supplied.) Obviously if the company is in receivership it no longer retains the lawful authority to issue insurance on mobile homes. See also Myers v. Protective Life Insurance Co., 342 So.2d 772, 777 (Ala.1977). This position was forcefully reiterated in People ex rel Palmer v. Peoria Life Insurance Co., 376 Ill. 517, 34 N.E.2d 829, 136 A.L.R. 151 (1941), recognizing that contracts of agents necessarily, and as a matter of law, are dependent for their continued existence upon the viability of the insurance company, and that the parties must be conclusively presumed to have entered into the agency contract in contemplation of the future possibility of the com *1136 pany’s insolvency and liquidation under the Illinois Liquidation Act. Consequently, upon the occurrence of such possibility, the agency contract is also necessarily terminated.
The Palmer court also addressed the same argument raised by appellant at bar: that the reinsurer, in taking over the business and assets of the insolvent insurance company, thereby assumed all the burdens of the business, and stood in place of the former company and became liable for all renewal commissions agreed to in the contract. The court observed that the reinsurance contract entered into between the reinsurer and the policyholders of the insolvent company did not obligate the reinsurer to pay the former agents of the insolvent company any services rendered their former employer.
As to appellant’s argument that it was unconstitutionally deprived of its contract rights without payment of full compensation, we respond that insurance agents do not have a vested interest in future premiums against insolvency receivers. Moreover, Mertens can make no valid argument that the actions of the receiver impaired the obligation of his contract, contrary to the constitutional prohibition, since all relevant provisions of Chapter 631 were in effect at the time of the contract’s formation under which Mertens seeks contingent renewal commissions. By operation of law, such provisions became part of the contract. See Springer v. Colburn, 162 So.2d 513 (Fla.1964).
Affirmed.
SHIVERS and JOANOS, JJ., concur.

. Appellant presented an alternative basis for assessing future damages, based on evidence revealing that appellant’s average annual income for the 1976-1979 fiscal years was $40,-166.00, which, for the five-year period, totaled $200,830.00.

. This provision is now codified at Section 631.-192(2)(b), Florida Statutes.