NEBLETT ET AL. *v.* CARPENTER, INSURANCE COMMISSIONER, ET AL.

No. 21.  Argued October 18, 1938.—Decided December 5, 1938.

*Mr. Wm. H. Neblett,* with whom *Messrs. R. Dean Warner* and *Vernon Bettin* were on the brief, for petitioners.

*Mr. Wm. Marshall Bullitt* and *Miss Hester W. Webb,* with whom *Messrs. U. S. Webb,* Attorney General of

California, and *Perry Price* were on the brief, for respondents.

*Messrs. T. B. Cosgrove, John N. Cramer, Josiah E. Brill, George I. Cochran,* and *H. S. Dottenheim* were on several briefs for individual respondents.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The questions raised are whether proceedings for the rehabilitation of an insurance company, pursuant to the Insurance Code of California,[1] unconstitutionally deprive policy holders of their property without due process of law, or impair the obligation of their contracts.[2]

For many years the Pacific Mutual Life Insurance Company of California has written life, health, and accident insurance. Since 1918 it has issued noncancelable health and accident policies. The Insurance Commissioner of California determined that, while the life and general health and accident business was in sound condition, there was an over-all deficit in reserves due to the unprofitable nature of outstanding noncancelable health and accident risks, with the result that the company was insolvent within the meaning of the Code. July 22, 1936, the Superior Court of Los Angeles County, on his application, appointed him conservator. On the same day he applied for and obtained an order which appointed him liquidator of the company. On the same day, as conservator, he petitioned for authority to rehabilitate

---

[1] Statutes 1935, c. 145, pp. 540–553. The sections of the Insurance Code bearing upon the issues in the case are 1011–16, inclusive, 1021, 1024, 1025, 1035, 1037, 1043.

[2] In the court below contentions were made under the equal protection clause of the Fourteenth Amendment but neither the reasons stated in support of the petition nor the assignments of error in this court present any question under that clause.

the company and submitted a plan embodying an agreement, to be executed by the company and himself as Commissioner, with a new corporation, which he would form, all of whose capital stock he would purchase with the assets of the company, and to which he would transfer most of the assets, retaining the stock of the new company and certain other assets of the old. The new company was to assume the policies and obligations of the old company to the extent provided in the agreement. Policy holders were to have the option of taking insurance from the new company or proving their claims for breach of their contracts, provision for payment being made by covenants of the new company and the retained assets of the old. The court approved the plan and authorized the execution and performance of the agreement.

Shortly afterwards it was discovered that the judge who acted in the cause was probably disqualified by ownership of a policy issued by the company. August 11, 1936, another judge entered an order, which, after adverting to the possible disqualification of the judge who made the earlier orders, ratified, approved, and confirmed the order appointing the Commissioner conservator and, on the basis of the petition filed on July 22, independently, and as an original order, appointed the Commissioner conservator, invested him with title to all the company's assets, and authorized him to endeavor to consummate a rehabilitation or reinsurance plan. On September 25 the Commissioner presented a further petition for approval of the rehabilitation and reinsurance agreement, which recited his actions taken pursuant to the court's orders and to the plan of rehabilitation, and asked approval thereof. An order issued which directed all interested persons to show cause why the agreement, and what had been done pursuant to it, should not be approved and all the prior acts of the Commissioner ratified and confirmed, and fixed a hearing. At the hear-

ing, which lasted from October 19 to December 4, many officers, stockholders and policy holders who had intervened, including the petitioners, were heard. Plans of rehabilitation presented by some of them were considered; evidence was taken and argument was had. December 4 an order was entered approving the Commissioner's plan and agreement, ratifying the action he had taken, and authorizing him as conservator, and as liquidator, if he should be appointed as such, to carry out the rehabilitation agreement. The court retained jurisdiction to make further orders for the effectuation of the plan and agreement.

The Supreme Court of California affirmed the order.[3] The action of that court in overruling certain of petitioners' contentions is claimed to have deprived them of their property without due process.

The court declared that the orders of July 22, 1936, were void because of the disqualification of the judge who made them. The petitioners argue that in consequence the Commissioner's transfer of assets to a new company pursuant to the approved plan was void and that its illegality could not be cured by subsequent court action. The Supreme Court held, however, that the court in which the Commissioner's original petition was filed thereby acquired jurisdiction and that the avoidance of the orders made by the disqualification of the judge who entered them did not disenable a qualified judge thereafter from entering valid orders based on the petition. It is further urged that as the old company's assets were transferred to the new pursuant to a void order there was nothing on which any later order could operate. The later order, which is the subject of review, ratified and confirmed the transfer, and the Supreme Court held the order effective under the Insurance Code.

---

[3] *Carpenter* v. *Pacific Mutual Life Ins. Co.*, 10 Cal. 2d 307; 74 P. 2d 761.

It is said that the Code does not authorize the Commissioner to delegate to a corporation organized by him powers and duties in aid of his administration of the assets of an insolvent insurance company. The state court has held such procedure is in accordance with the Code provisions.

It is argued that the authority which the Code confers on the Commissioner to enter into rehabilitation or reinsurance agreements does not embrace a contract for assumption of the insolvent company's policies by a new company organized by the Commissioner. The court below held the provisions of the statute contemplated such action.

It is claimed that the Commissioner's action violated certain state statutes concerning fraudulent conveyances. The state court held the contrary.

All of these holdings concern matters of state law and amount at most to alleged erroneous constructions of the State's statutes by its own court of last resort. Such decisions would not be a denial of the due process guaranteed by the Fourteenth Amendment.[4] We are, therefore, without jurisdiction to review the state court's decision of any of those questions.

It is argued that the Code unconstitutionally delegates legislative functions to the Commissioner, and that the Supreme Court erred in not so holding. This, again, is a question of state law the decision of which by the State's highest court is binding upon us.[5]

The Insurance Code provides: "In any proceeding under this article, the commissioner, as conservator . . .

---

[4] *Arrowsmith* v. *Harmoning*, 118 U. S. 194, 196; *Central Land Co.* v. *Laidley*, 159 U. S. 103, 112; *Iowa Central Ry. Co.* v. *Iowa*, 160 U. S. 389, 393; *West* v. *Louisiana*, 194 U. S. 258, 261; *Standard Oil Co.* v. *Missouri*, 224 U. S. 270, 287; *McDonald* v. *Oregon R. & N. Co.*, 233 U. S. 665, 669; *American Ry. Exp. Co.* v. *Kentucky*, 273 U. S. 269, 273.

[5] *Ohio* v. *Akron Park District*, 281 U. S. 74, 79.

may, subject to the approval of said court, . . . mutualize or reinsure the business of" an insurance company "or enter into rehabilitation agreements." The petitioners assert that this language is so vague that no one can determine what powers are intended to be conferred upon the Commissioner and that the state courts, in construing the Code to authorize the plan and procedure here in question unconstitutionally attempted to read a meaning into the statute of which it is not susceptible, and thus deprived the petitioners of their property without due process. The court below fully considered the contention and overruled it. We think its decision was justified by the criteria approved by this court.[6]

The petitioners unsuccessfully claimed in the Supreme Court that the method of liquidation adopted by the Commissioner and approved by the court, even if authorized by the Insurance Code, denies them due process and impairs the obligation of their policy contracts. Because of these contentions we granted certiorari.

One of the petitioners holds a life policy which, if he assents to the plan, will be replaced by a policy of the new company for the same amount. The others are holders of noncancelable health and accident policies no liability under which has accrued. If they assent to the plan and accept the obligation of the new company, in lieu of that of the old, they will receive insurance for only a percentage of the face value of their old policies. The alternative open to all is to dissent from the plan and to prove their claims for breach of their policy contracts against the liquidator of the old company. They insist this option is not available to them as no liquidator has been appointed. When they took their appeal to the State Supreme Court, there was pending an application for the appointment of the Commissioner as liquidator,

---

[6] *Connally* v. *General Construction Co.*, 269 U. S. 385, 391.

and no reason is assigned why action cannot be taken upon this petition pursuant to the plan. The Supreme Court has said: "The proposal contemplates that in due course the commissioner will be appointed liquidator of the old company, and in that capacity will receive, liquidate, and pay all claims against the old company from the old company's assets not transferred to the new company (including the new company's stock), and from certain moneys furnished to the liquidator by the new company as provided in the agreement." 10 Cal. 2d 307, 322; 74 P. 2d 761, 771. The petitioners assert that the funds provided will be insufficient for the payment of their claims and others of like character, should they dissent from the plan. The order of the Superior Court recites that the plan makes adequate provision for each class of policy holders, for the creditors, and for the stockholders; that the plan is fair and equitable; that it does not discriminate unfairly or illegally in favor of any class of policy holders; that the intangible assets conserved by the plan are worth several million dollars and that if the old company were dissolved and its assets sold their value would be substantially less than the amount which will be realized from them under the plan.

The record upon which the appeal was taken to the Supreme Court of the State, and which has been brought here by our writ, contains only the judgment roll. The evidence is not before us and the court below has held that, under the state law, the judge was not bound to make special findings. We must presume that there was substantial evidence to sustain the court's decree. On account of the state of the record the petitioners are unable to point to any evidence to sustain their contention that if they dissent they will not receive as much in liquidation of their claims for breach of their policy contracts as they would upon a sale of assets and distribution of the proceeds.

The petitioners have no constitutional right to a particular form of remedy.[7] They are not entitled, as against their fellows who prefer to come under the plan and accept its benefits, to force, at their own wish or whim, a liquidation which under the findings will not advantage them and may seriously injure those who accept the benefit of the plan. They are not bound, as were the dissenting creditors in *Doty* v. *Love,* 295 U. S. 64, to accept the obligation of the new company but are afforded an alternative whereby they will receive damages for breach of their contracts. They have failed to show that the plan takes their property without due process.

It is not contended that a statutory scheme for the liquidation of an insolvent domestic corporation is *per se* an impairment of the obligation of the company's contracts. The argument is that the impairment of contract arises from the less favorable terms and conditions of the new noncancelable policies which are to be substituted for the old ones and, in the case of the life policies, by the substitution of a new company as contractor in place of the old, without the consent of the policy holder. This position is bottomed upon the theory that the policy holders are compelled to accept the new company as insurer on the terms set out in the rehabilitation agreement. As has been pointed out, they are not so compelled but are given the option of a liquidation which on this record appears as favorable to them as that which would result from the sale of the assets and pro rata distribution in solution of all resulting claims for breach of outstanding policies.

*Judgment affirmed.*

Mr. Justice Reed took no part in the consideration or decision of this case.

---

[7] *Gibbes* v. *Zimmerman,* 290 U. S. 326, 332; *Doty* v. *Love,* 295 U. S. 64, 70.