[L. A. No. 22883. In Bank. Apr. 16, 1954.]

CLEMENT J. MELANCON, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Guy E. Ward and David B. Heyler, Jr., for Petitioner.

Kenneth N. Chantry and David Mellinkoff as Amici Curiae on behalf of Petitioner.

Harold W. Kennedy, County Counsel (Los Angeles), and William E. Lamoreaux, Deputy County Counsel, for Respondent.

O'Melveny & Myers, William W. Alsup, Philip F. Westbrook, Jr., Wright, Wright, Green & Wright, Loyd Wright, Charles A. Loring, Loeb & Loeb, Herman F. Selvin, Allen E. Susman and John L. Cole, for Real Parties in Interest.

SCHAUER, J.—Petitioner seeks mandate to compel the superior court to enforce his claimed right to take the depositions of certain of the individual defendants, and officers of corporate defendants, in connection with a derivative stockholders' suit filed by petitioner, a stockholder in and as plaintiff on behalf of, defendant corporation Walt Disney Productions. The other defendants named are another corporation and seven individuals. Petitioner[1] also asked for a writ of prohibition restraining the lower court from proceeding with a hearing (pending when the petition was filed but concluded before the alternative writs issued) on defendants' motions to require petitioner to furnish security, under the provisions of section 834 of the Corporations Code, for the reasonable expenses, including attorney's fees, which defendants may incur in defending the derivative stockholders' suit. The alternative writs issued, but for reasons hereinafter stated we have concluded that the peremptory writs should be denied and the alternative writs discharged.

Prior to our consideration of the petition for the writs the lower court heard the motions for security, granted them as to all except one defendant, and on September 4, 1953, made and signed written findings and conclusions and an order that plaintiff furnish a total of $65,500 as security within 30 days after service upon plaintiff of written notice of the signing of the order, that plaintiff serve written notice

---

[1]Sometimes hereinafter referred to as plaintiff.

on defendants' counsel of the deposit of the security within 10 days "after plaintiff has complied with this order," and that further prosecution of the action by plaintiff "is hereby stayed, and said defendants need not file any pleadings herein" until 30 days after plaintiff shall have served the notice of his compliance with the order for security, with a further stay until 20 days after plaintiff's sureties have justified in case defendants except to such sureties. Thereafter, on September 10, we ordered issuance of the alternative writs; at that time we had not been informed of the hearing held and order made by the lower court. The writs issued commanding respondent court to show cause why the depositions should not be ordered and prohibiting "any further proceedings with reference to a hearing on said Motions to require security, except as directed hereby, until the further order of this Court thereon." Thereafter, on September 16, petitioner filed a supplemental petition for the two writs, alleging the hearing in the lower court on the security motions and the written order of September 4 granting them, and asking that such order be set aside and petitioner "be permitted to take the depositions of all party defendants," or, alternatively, that that court be restrained from dismissing the action if plaintiff fails to furnish the security ordered.

From the petition (as supplemented) for the writs and the return and answer thereto it appears that since 1947 plaintiff has been a shareholder of Walt Disney Productions,[2] a corporation. He filed his derivative action against that corporation, certain of its alleged officers and directors, and Walt Disney, Incorporated,[3] a corporation. He asked that certain contracts between Disney Productions and defendant Walter E. Disney, and between Disney Productions and Disney, Inc., be declared invalid; that Walter E. Disney and Disney, Inc., account for all moneys received by virtue of such contracts; that Walter E. Disney account for sums paid him by Disney Productions as compensation for services rendered since 1940; and that Disney Productions and its officers and directors be enjoined from making further payments under the contracts attacked by plaintiff.

After filing the derivative action, plaintiff gave notices and had served subpoenas duces tecum for the taking of depositions of certain of the defendants and corporate officers; upon

[2]Hereinafter sometimes referred to as Disney Productions.
[3]Hereinafter sometimes referred to as Disney, Inc.

their refusals either to be sworn or to answer various questions they were directed to appear for court rulings thereon. Meanwhile all defendants filed motions to require plaintiff to furnish security for expenses, including attorney's fees, under section 834 of the Corporations Code. Also, the court stayed further proceedings on the depositions until after the hearing and order on the motions for security. This petition (as supplemented) for mandamus and prohibition followed. As above noted, we acted on the petition without having been informed that the lower court had theretofore heard and granted the motions for security[4] and had stayed further prosecution of the action until the security was furnished.[5]

In support of the order requiring such security the court found, among other things (in the language of § 834), "That there is no reasonable probability that the prosecution of the cause of action alleged . . . will benefit the corporation or its security holders."

Petitioner in support of his contention that this case is a proper one for the issuance of the jurisdictional writ of prohibition, attacks, on grounds for the most part substantially the same as those recently discussed in *Beyerbach* v. *Juno Oil Co.* (1954), *ante,* p. 11 [265 P.2d 1], the constitutionality of the security provisions here involved.

It is now established in this state that where there is no other adequate remedy, such as by appeal, "The constitutionality of a statute or ordinance may be tested by prohibi-

[4]Except the motion of defendant Disney, Inc., which the court held was "a third party defendant" as to which the court "has no constitutional authority to grant the motion" to require plaintiff to furnish security. For that reason only, the motion of such defendant was denied. In this view the court erred under our holding in *Beyerbach* v. *Juno Oil Co., ante,* pp. 11, 23 [265 P.2d 1], filed January 5, 1954, subsequent to the trial court's ruling herein.

[5]From supplemental briefs now on file herein, it further appears that plaintiff has not yet posted the security ordered by the court, but instead, on October 2, 1953, moved the court for an extension of time within which to furnish it. That motion "was heard on the 7th day of October, 1953, and because of the alternative writs having been issued," the trial court continued the hearing on the motion until January 18, 1954. Meanwhile, plaintiff has served and filed a notice of appeal from the order requiring the security, and defendant Disney, Inc., whose motion for security was denied in the same order, has done likewise. The supplemental briefs also make mention of an "intervener" whom the trial court, "after the security motions had been made," permitted to appear on the plaintiff's side; defendants then moved to subject the intervener to the security order and hearing on the motion "was postponed by the trial court."

tion on the ground that invalidity of the legislation goes to the jurisdiction of the court to proceed to try the case.'' (*Rescue Army* v. *Municipal Court* (1946), 28 Cal.2d 460, 462-467 [171 P.2d 8]; see, also, Code Civ. Proc., §§ 1102, 1103; *Hunter* v. *Justice's Court* (1950), 36 Cal.2d 315, 323 [223 P.2d 465].) By our opinion in the Beyerbach case petitioner's attacks on the statute have been answered adversely to him in most respects.

His remaining contentions concern the depositions he sought to take. He urges that by refusing to compel completion of the depositions the trial court deprived him of the means of effectively obtaining evidence to oppose the motions for security, particularly with respect to whether there is a ''reasonable probability that the prosecution of the cause of action alleged . . . will benefit the corporation or its security holders'' (Corp. Code, § 834), and that he was thereby denied equal protection of the law. In this respect, petitioner relies upon section 2021 of the Code of Civil Procedure[6] and upon cases in which mandamus has issued to compel the lower court to enforce the right to take depositions or to perpetuate testimony. (See *McClatchy Newspapers* v. *Superior Court* (1945), 26 Cal.2d 386 [159 P.2d 944]; *Brown* v. *Superior Court* (1949), 34 Cal.2d 559 [212 P.2d 878]; *Superior Ins. Co.* v. *Superior Court* (1951), 37 Cal.2d 749 [235 P.2d 833].)

█ In none of the cited cases, however, had the hearing or trial in connection with which the testimony or deposition was sought been held and the order or judgment of the trial court been rendered prior to the issuance of an alternative writ or writs by the appellate court. By contrast, in the matter now before us, as already noted, the hearing on the motions for security had been held, over a period of three days, and the order for the furnishing of the security by plaintiff had been made prior to the consideration by this court of the petition for the writs. Under such circumstances it appears that the remedy by appeal from the judgment of dismissal which presumably will follow if the ordered security is not furnished is not only an adequate, but is clearly a more appropriate remedy than the writs here sought.

█ In the first place, the rule is that prohibition ordi-

---

[6]Section 2021: ''The testimony of a witness in this State may be taken by deposition in any action at any time after the service of the summons or the appearance of the defendant. . . .''

''1. When the witness is a party to the action or proceeding or an officer, member, agent, or employee of a corporation. . . .''

narily issues only to prevent future judicial acts rather than to undo acts already performed. (See *State Board of Equalization* v. *Superior Court* (1937), 9 Cal.2d 252, 254 [70 P.2d 482]; 21 Cal.Jur. 581-582, and cases there cited.) ▉ Although exceptions to this rule have been made and the writ has been allowed where the act in question is a continuing one and the circumstances are so aggravated as to justify immediate relief, such as where a receiver has been appointed, an injunction has issued, or property has been seized under a void order (see *Evans* v. *Superior Court* (1939), 14 Cal.2d 563, 580-581 [96 P.2d 107], and cases there cited), and "where, because of delay, there would be consequential damages" (*Golden State Glass Corp.* v. *Superior Court* (1939), 13 Cal.2d 384, 389 [90 P.2d 75]), no such aggravated circumstances or consequential damages would appear to flow from the order requiring the furnishing of security by plaintiff in the derivative stockholders' action, or from the entry of an appealable judgment of dismissal which would follow plaintiff's failure to comply with the security order. ▉ As recently reaffirmed in *Jollie* v. *Superior Court* (1951), 38 Cal. 2d 52, 56 [237 P.2d 641], the expense of an appeal is insufficient to justify issuance of the writ of prohibition.

▉ In the second place, petitioner in his third supplemental petition for the writs, complains of rulings by the court on evidence offered by him as plaintiff at the three-day hearing on the security motions, complains that one of the defendants subpoenaed by plaintiff as a witness was excused from testifying at such hearing because of illness, complains that although one eight-day continuance of such hearing was granted plaintiff in order to permit subpoena by him of certain witnesses he was refused a further continuance although he had been unable to serve the subpoenas, and complains that one defendant was allowed more security than he requested. It seems apparent from a mere statement of these various complaints that they do not go to the court's jurisdiction and may not properly be considered on this application for mandamus and for prohibition but only upon an appeal and a record of the hearing.

▉ Finally, refusal by the court to order completion of the depositions prior to the hearing, even if we assume (we do not so hold) that such refusal was erroneous, would likewise appear not to have violated petitioner's rights in a constitutional or jurisdictional sense. He was given a full

opportunity to subpoena and produce witnesses, and to elicit evidence, both oral and by affidavit, and he did so, at the hearing on the security motions.[7] As declared in *Whitley* v. *Superior Court* (1941), 18 Cal.2d 75, 81 [113 P.2d 449], quoting from 12 American Jurisprudence, Constitutional Law, section 637, page 327, "A hearing before judgment, with full opportunity to present all the evidence and the arguments which the party deems important, is all that can be adjudged vital under the guaranty of due process of law . . ." (See also *Wood* v. *Pendola* (1934), 1 Cal.2d 435, 444 [35 P.2d 526]; *Dohany* v. *Rogers* (1929), 281 U.S. 362, 369 [50 S.Ct. 299, 74 L.Ed. 904].)

 Petitioner cites no authority and we are aware of none which declares opportunity to take depositions of witnesses prior to a trial or hearing to be a requirement of due process. Mere erroneous construction of statutes does not constitute a denial of due process. (*Neblett* v. *Carpenter* (1938), 305 U.S. 297, 302 [59 S.Ct. 170, 83 L.Ed. 182].)

 Moreover, as pointed out by respondent, under our perpetuation of evidence statutes (Code Civ. Proc., §§ 2083-2089; see also *MacLeod* v. *Superior Court* (1952), 115 Cal. App.2d 180 [251 P.2d 728]) it would seem that plaintiff-petitioner, *on proper showing, could have taken the depositions of defendants prior to filing his stockholder's derivative action, and have thereby discovered whether there was sufficient probability of benefit to the corporation to justify bringing the action at all.* Section 834, which provides for the security motions, *by its terms appears to apply only to actions already commenced.*

In addition, it may be noted that under the New Jersey statute upheld by the United States Supreme Court in *Cohen* v. *Beneficial Industrial Loan Corp.*[8] (1949), 337 U.S. 541 [69 S.Ct. 1221, 93 L.Ed. 1528], the right of the corporation

---

[7]We do not have before us and we do not here consider the effect of the security statute with respect to denial of the right to take the deposition of a non-resident witness whose testimony material to the motion is not otherwise available.

[8]The ultimate question in that case, as stated by the court (p. 543 of 337 U.S.) "is whether a federal court, having jurisdiction of a stockholders' derivative action only because the parties are of diverse citizenship, must apply a statute of the forum state which makes the plaintiff, if unsuccessful, liable for the reasonable expenses, including attorney's fees, of the defense and entitles the corporation to require security for their payment." The act expressly provided that it should "take effect immediately and shall apply to all such actions [stockholders' derivative suits by stockholders holding less than five per centum in value (or

to require plaintiff to "give security for the reasonable expenses, including counsel fees," is absolute (when it arises at all, under the terms of the act) and, unlike the California statute, does not depend upon a showing of nonprobability of benefit to the corporation from prosecution of the derivative action. Consequently it is apparent that in the invoked constitutional aspect it is not necessary to the sustaining of the statute now before us that such a showing be made or that plaintiff be accorded the right he claims of taking depositions in order to support his claim of probable benefit.

 Petitioner further urges that he is entitled to proceed with the depositions he seeks, in the course of preparing for the eventual trial of the derivative action, even though he has not as yet complied with the order for the posting of security. It seems clear, however, that the taking of depositions for such purpose would constitute a step in the "prosecution" of the action and therefore falls within the stay provisions of section 834.[9] (See *Ray Wong* v. *Earle C. Anthony, Inc.* (1926), 199 Cal. 15, 18 [247 P. 894], in which it is stated that "The term 'prosecution' is sufficiently comprehensive to include every step in an action from its

---

$50,000.00 market value) of the corporation's aggregate shares] . . . now pending . . . and to all future actions . . ."

In relation to constitutionality, the court held that such statute appeared to be substantially prospective in application: "Its terms do not appear to require an interpretation that it creates new liability against the plaintiff for expenses incurred by the defense previous to its enactment. The statute would admit of a construction that plaintiff's liability begins only from the time when the Act was passed or perhaps when the corporation's application for security is granted and that security for expenses and counsel fees which 'may be incurred' does not include those which have been incurred before one or the other of these periods."

As to the ultimate question—whether the statute (which as emphasized by Justices Douglas and Frankfurter is inherently procedural in effect) was so narrowly and exclusively state-court procedural in character as to not be properly enforceable in actions maintained in federal courts because of diversity of citizenship—the court pointed out that (pp. 555-556 of 337 U.S.) "Rules which lawyers call procedural do not always exhaust their effect by regulating procedure. But this statute is not merely a regulation of procedure. . . . [I]t creates a new liability where none existed before, for it makes a stockholder who institutes a derivative action liable for the expense to which he puts the corporation and other defendants, if he does not make good his claims . . . If all the Act did was to create this liability, it would clearly be substantive . . . We do not think a statute which so conditions the stockholder's action can be disregarded by the federal court as a mere procedural device."

[9]Section 834, subd. (c): "If any such motion [for security] is filed, no pleadings need be filed by the corporation or any other defendant, and the prosecution of such action shall be stayed, until 10 days after such motion shall have been disposed of."

commencement to its final determination.'') ▇ It therefore appears that the court has properly refused to proceed further with respect to the depositions until such time as petitioner may comply with the order respecting security. The fact that defendants may take such depositions in the meantime, if they be so advised, does not deprive petitioner of equal protection of the law. As declared in the Hogan and Beyerbach cases the power of the Legislature in this type of litigation is plenary, and it is no more a denial of equal protection to suspend petitioner's right to take depositions until he deposits the security ordered than it is to require that he furnish such security while not making a reciprocal requirement of defendants. ▇ Also, as emphasized in both the Hogan and Beyerbach cases, the cause of action, if any, does not belong to plaintiff. It belongs to the corporation. The statute neither adds one iota to nor subtracts one iota from the cause of action. ▇ Such statute, therefore, applied as we have applied it, only to actions instituted since its enactment, is wholly procedural in its effect in a state court; it merely prescribes the conditions on which a volunteer plaintiff may maintain a suit on the corporation's cause of action. No personal right of plaintiff's is to be litigated; if he becomes liable for the reasonable expenses of others which he has caused them to incur in successfully defending against his unsuccessful action for the corporation, it is a result of his own volunteer act in subjecting himself and the persons he names as defendants to the procedures of the court.

▇ It may further be noted that if plaintiff does post the security ordered by the court and then proceeds with the securing of evidence by way of depositions he may thereafter, as an incident of the procedural scheme set up by section 834, apply to the trial court for a decrease in the amount of security ''upon showing that the security provided . . . is excessive.''

The peremptory writs are denied and the alternative writs discharged.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent.

It is my considered opinion that a full and substantial compliance with the laws of this state requires this court to issue a writ of mandate compelling the superior court to

enforce petitioner's right to take certain depositions. The right to take depositions is an essential element in the process of discovery and nowhere in the law is discovery more important than in stockholder derivative actions; since in this type of action the plaintiff shareholder must usually obtain his facts from the records of the corporation or from the corporate officers. To deny the right of discovery in such a case is in effect a denial of the right to maintain a shareholder's derivative action.

In the case at bar, petitioner filed a shareholder's derivative action against the corporation and certain of its officers and directors. Thereafter the trial court issued subpoenas duces tecum re depositions which were duly served upon Mr. Lessing and Mr. Johnson individually and upon Mr. Johnson as secretary of the defendant corporation. Petitioner was unable to perfect service upon Mr. Walt Disney and Mr. Roy Disney. On July 6, 1953, and pursuant to said subpoena, Mr. Lessing delivered copies of certain corporate records to petitioner and was sworn as a witness. When Mr. Lessing refused to answer 47 of the questions, he was ordered to appear in the superior court on July 13, 1953, to show cause why he should not answer the questions propounded by counsel for petitioner.

Meanwhile all of the defendants filed a motion, pursuant to section 834 of the Corporations Code, to require plaintiff to furnish security for expenses and attorney's fees. At the time this motion was filed no depositions, except the incompleted one of Mr. Lessing, had been taken; nevertheless the trial court stayed further proceedings on the depositions until after the hearing and order on the motions for security. In so doing the court committed a grave error based upon a complete misconception of section 834 of the Corporations Code.

Under the provisions of said section 834, the motion for security may be supported on either of two grounds: "(1) That there is no reasonable probability that the prosecution of the cause of action alleged in the complaint against the moving party will benefit the corporation or its security holders; (2) That the moving party, if other than the corporation, did not participate in the transaction complained of in any capacity." In order to determine if either of these two elements are present and whether the motion for security should be granted, the trial court conducts a hearing, at

which time, under the provisions of section 834, the court considers "such evidence written or oral, by witnesses or affidavit, as may be material: (a) to the ground or grounds upon which the motion is based, or (b) to a determination of the probable reasonable expenses, . . ."

It thus becomes apparent that the hearing on the motion for security is in effect a "little trial" of the case in chief at which the plaintiff must make his showing of merit or risk complete defeat. In order to show that his case has merit, it is usually necessary for the shareholder plaintiff to subpoena certain corporate records and take the depositions of various corporate officers in advance of the hearing. Without these essential elements in the process of discovery the shareholder may have a valid cause of action which will benefit the corporation but he may be unable to produce the necessary evidence at the hearing on the motion for security. No impediment should be placed in the way of a shareholder plaintiff which would prevent the securing of this necessary evidence.

When the trial court stayed further proceedings on the depositions, until after the hearing on the motion for security, petitioner was in effect forced into the hearing without the necessary depositions and evidence. Such a situation could not have been contemplated by the Legislature when it enacted section 834. It is true that section 834 provides that after the motion for security has been filed "no pleadings need be filed by the corporation or any other defendant, and the prosecution of such action shall be stayed, until 10 days after such motion shall have been disposed of." But this does not mean that the shareholder cannot continue to secure evidence which is necessary for the hearing. Nor does it mean that the avenues of discovery should be closed to the shareholder plaintiff. The mere fact that the plaintiff must show the merits of his case at the hearing on the motion for security, requires by necessary implication that he be permitted to continue his quest for the necessary evidence.

Section 2021 of the Code of Civil Procedure provides that "The testimony of a witness in this State may be taken by deposition in any action at any time after the service of the summons or the appearance of the defendant. . . ." In *McClatchy Newspapers* v. *Superior Court,* 26 Cal.2d 386, 393 [159 P.2d 944], this court stated that: "Ordinarily the trial court has no discretion to refuse to exercise its powers so far as necessary to secure to a litigant the right to a

deposition in the cases defined by the code. [Citations.] The language of section 2021 of the Code of Civil Procedure providing that 'The testimony of a witness . . . may be taken by deposition' confers upon litigants the *right* to take depositions. (See [my dissent in] *Hays* v. *Superior Court,* 16 Cal.2d 260, 264 [105 P.2d 975].)'' It is well recognized that ''Statutes authorizing the taking of depositions should be liberally construed with a view to effecting their objects and promoting justice, and to the end that a litigant in a pending action may be afforded a reasonable opportunity to procure available testimony in support of his cause.'' (26 C.J.S., Depositions, § 4, p. 810; citing *Pollak* v. *Superior Court,* 197 Cal. 389 [240 P. 1006]; *Moran* v. *Superior Court,* 38 Cal.App.2d 328 [100 P.2d 1096]; and *Zellerbach* v. *Superior Court,* 3 Cal.App.2d 49 [39 P.2d 252].)

In support of his position petitioner relies upon section 2021 of the Code of Civil Procedure and upon cases in which mandamus has issued to compel the lower court to enforce the right to take depositions or to perpetuate testimony. (*McClatchy Newspapers* v. *Superior Court, supra,* 26 Cal.2d 386; *Brown* v. *Superior Court,* 34 Cal.2d 559 [212 P.2d 878]; *Superior Ins. Co.* v. *Superior Court,* 37 Cal.2d 749 [235 P.2d 833].) In an attempt to distinguish these cases, the majority has stated in effect that in the instant case the hearing on the motions for security has already been held and there is thus no adequate reason why petitioner should be permitted to proceed with the taking of depositions. The majority argues that under such circumstances ''it appears that the remedy by appeal from the judgment of dismissal which presumably will follow if the ordered security is not furnished is not only an adequate, but is clearly a more appropriate remedy than the writs here sought.'' Such reasoning loses sight of the fact that ''Mandamus is the appropriate remedy to secure the enforcement of a litigant's statutory right to take depositions, and an appeal from a final judgment is neither speedy nor adequate where a trial court improperly refused to order that a deposition be taken.'' (*McClatchy Newspapers* v. *Superior Court, supra,* 26 Cal.2d 386, 392.) In *Brown* v. *Superior Court, supra,* 34 Cal.2d 559, 562, this court stated, after citing several cases, that ''Three situations are presented by the above cases: (1) where a party seeks to perpetuate testimony under section 2083 et seq., of the Code of Civil Procedure prior to the bringing of an action; (2) where the deposition is sought under section 2021 after commencement of the action

and pending trial; and (3) where the deposition is sought under section 2021 pending appeal and retrial upon a possible reversal of the judgment. We see no good reason for differentiating between these three situations insofar as appealability is concerned, or for departing from the cases which hold that the order is not appealable. Although such orders are, of course, reviewable by appeal from the final judgment, a party should not be required to proceed to trial without the benefits afforded by a deposition to which he is entitled, and it is well settled that under such circumstances the burden, expense and delay involved in a trial render an appeal from an eventual judgment an inadequate remedy.''

In the instant case plaintiff desired to take certain depositions before the hearing on the motion for security was had, but the trial court stayed further proceedings on the depositions until after the hearing and order on the motions for security. Such arbitrary action on the part of the trial court forced petitioner to appear at the hearing without the benefit of the depositions. In its attempt to justify the trial court's refusal to enforce petitioner's right to take depositions prior to the hearing on security, the majority takes the position that petitioner's rights were not violated since ''He was given a full opportunity to subpoena and produce witnesses, and to elicit evidence, both oral and by affidavit, and he did so, at the hearing on the security motions.'' Such fallacious reasoning is similar to saying that where a person is given a trial and allowed to produce witnesses it is permissible to deny him the right to take depositions. It must be remembered that ''The statutory right to take depositions may not be withheld or curtailed in the discretion of the court. The cases have consistently so held. 'Insofar as the propriety of the use of the writ for this purpose is concerned, it is well settled that there is a clear duty on the trial court to enforce the statutory right to a deposition and compel a witness to testify.' (*Brown* v. *Superior Court,* 34 Cal.2d 559 [212 P.2d 878].)'' (*Carnation Co.* v. *Superior Court,* 96 Cal.App.2d 138, 141 [214 P.2d 552].)

The case at bar presents the unique situation wherein the shareholder plaintiff was denied the right to take depositions once the defendants had filed their motions for security. He was thus denied certain essential rights of discovery which have become a part of our law. Thereafter petitioner was forced into the hearing on the motion for security without the benefit of the desired depositions and the trial court required

more than $65,000 in security because it found among. other things "That there is no reasonable probability that the prosecution of the cause of action alleged . . . will benefit the corporation or its security holders." In granting the motions for security the trial court did, however, refuse to require security for the "third party defendant" on the ground that it had no constitutional authority to grant such a motion. With this I am in full accord. For the reasons outlined in my dissent in *Beyerbach* v. *Juno Oil Co., ante,* p. 11 [265 P.2d 1], it is my considered opinion that section 834 of the Corporations Code is unconstitutional and a denial of equal protection of the law insofar as it requires a plaintiff shareholder to post security for third party defendants who are neither directors, officers, nor employees of the defendant corporation.

As part of its order requiring security the court stayed further prosecution of the action by plaintiff. The majority attempts to interpret this stay of prosecution as being sufficient to deny petitioner the right to proceed with the taking of depositions. In support of this position they rely on the case of *Ray Wong* v. *Earle C. Anthony, Inc.,* 199 Cal. 15, 18 [247 P. 894], in which it is stated that "The term 'prosecution' is sufficiently comprehensive to include every step in an action from its commencement to its final determination." The Wong case involved an action for malicious prosecution wherein it was essential to the cause of action that the prosecution had begun. In such a case a comprehensive definition of this nature may have been proper. However, it is clear that the Legislature did not intend the word prosecution as used in section 834 of the Corporations Code to have such an extensive connotation. It is true that section 834, subdivision (c), provides that "If any such motion is filed, no pleadings need be filed by the corporation or any other defendant, and the prosecution of such action shall be stayed, until 10 days after such motion shall have been disposed of"; however, there is no indication anywhere in the section that the plaintiff shareholder is to stop all activity. The mere fact that a hearing on the motion for security is required illustrates the need for plaintiff's continued activity. Such activity must necessarily involve the gathering of evidence, the preparation of affidavits, the subpoenaing of witnesses, and the pursuit of various avenues of discovery, including the taking of depositions. Section 834 requires that all prosecution be stayed, but there is nothing to indicate that the word prosecution, as used, was meant

to include every step in an action, since by its very terms, section 834 requires a hearing following the motion for security at which time the court "shall consider such evidence, written or oral, by witness or affidavit, as may be material: . . ." Therefore if further proceedings are required after the motion for security has been filed the term prosecution could not have been used in such a way as to include "every step in an action from its commencement to its final determination."

In view of the fact that section 834 requires the shareholder plaintiff to produce evidence, at the hearing, which will substantiate his claim, it is not reasonable to say that the same section also prohibits him from proceeding to take the depositions through which such required evidence can be obtained. Such an interpretation would have the same effect as saying that a plaintiff cannot take his depositions until after the trial of his case. In shareholder derivative actions, the hearing on the motion for security is actually a "little trial" of the case and in many cases it is the deciding factor. If a shareholder is unable to secure the necessary depositions he may be unable to secure the evidence needed to oppose the motion for security. If the necessary evidence is not available at the security hearing plaintiff may be required to post security for the expenses and attorneys' fees of all the defendants. Such expenses are frequently quite extensive, especially where a great many directors and officers are involved as defendants. The higher the security requirement the more insurmountable the barrier to continuing the derivative action. In the instant case the trial court required petitioner to post more than $65,000 in security before proceeding. How many small shareholders are in a position to raise $65,000? How many could raise even one half that amount? It thus becomes apparent that the outcome of the hearing on the motion for security may be the deciding factor of the entire derivative action.

Recognizing the crucial nature of the security requirement, what brand of justice would prohibit the taking of depositions preceding a hearing on the motion for security? On the contrary, the courts of this state have consistently upheld the right to take depositions and have frequently stated that it would not be proper to compel a party to proceed to trial without the depositions for which he had made proper request. In the case of *McClatchy Newspapers* v. *Superior Court, supra,* 26 Cal.2d 386, 393, this court discussed *Hays*

v. *Superior Court,* 16 Cal.2d 260 [105 P.2d 975], and *Patrick Farms, Inc.* v. *Superior Court,* 13 Cal.App.2d 424 [56 P.2d 1283], and then stated that although in those cases "the deferment of the time of taking the deposition was deemed justified by reason of special circumstances, there is no suggestion in those cases that it would be proper to compel a party to proceed to trial without a deposition for which a proper request has been made." By the same reasoning it is not proper to compel a party to proceed to a hearing, which may be the turning point of the case, without depositions for which a proper request had been made.

It is true that petitioner may have the amount of the security reduced upon a proper showing that such amount is excessive; however such a showing requires additional evidence which may not be available to petitioner unless he is permitted to take certain depositions. In the instant case the trial court stayed further proceedings on the depositions both before and after the order for security had been rendered. This placed the shareholder petitioner in the unique position of not only being prevented from taking depositions in order to oppose the motion for security but of also being prohibited from taking depositions which could uncover the evidence needed to reduce the security requirement. Thus petitioner could not secure the depositions needed to oppose the motion for security nor could he secure the depositions needed to show why such security should be reduced.

If this court sustains such action on the part of the trial court, it will merely be *tying another knot in the cord which is gradually snuffing out the rights of corporate shareholders to maintain derivative actions.* For these reasons I would grant the writ of mandate to compel the superior court to enforce petitioner's right to take the requested depositions.